Woody WRIGLEY, Appellant,

v.

FIRST NATIONAL SECURITY COR-PORATION and Community Bank and Trust, Appellees.

No. 09–01–385 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 29, 2003.

Decided April 10, 2003.

Woody Wrigley, Sandy, Utah, pro se.

John D. Stone, Stone & Stone, Raymond M. Brassard, Brassard's Law Office, Glenn H. Steele, Jr., Provost & Umphrey Law Firm, LLP, Beaumont, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This appeal by Woody Wrigley, in a proceeding to enforce a judgment against First National Security Corporation with funds held by Community Bank and Trust in the name of the judgment debtor, raises the following issue: "Final, Valid, and Enforceable Texas Judgments Are Held By Me Based Upon Sustained Utah Judgments and Should be Upheld; the Texas Trial Court Erred in Eventually Not Recognizing Those Judgments and Subsequent Garnishments Based Thereon."

On March 30, 2000, Woody Wrigley filed a foreign judgment in the 136th District Court of Jefferson County, Texas, Cause No. D–162,543. The small claims judgment, which was entered on February 23, 2000, in Cause No. 00–840–0142 by the Third District Court, State of Utah, Salt Lake County, Sandy Department, awarded Wrigley a judgment for $5090.00 against First National Security Corporation ("FNSC"). A writ of garnishment issued and was served on the garnishee, Community Bank and Trust ("Community"). On May 18, 2000, Community answered the writ and admitted it held funds in the amount of over $85,000.00 that belonged to the judgment debtor, FNSC. On May 23, 2000, the trial court entered a garnishee order that ordered Community to pay $5,090.00 to Wrigley. Community filed a motion to vacate the garnishee order on the grounds that the order had not awarded attorney's fees to the garnishee. On May 31, 2000, the trial court entered a judgment in garnishment that included an award of $750.00 as attorney's fees for Community. On June 5, 2000, FNSC filed a motion to vacate the judgment in garnishment and dissolve the writ on the

grounds that in filing the foreign judgment, Wrigley failed to comply with the requirements of Sections 35.004 and 35.005 of the Texas Civil Practice and Remedies Code. Those sections require the judgment creditor to file either an affidavit of last known address of the judgment debtor and the judgment creditor, or follow an alternate notice of filing. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 35.004–.005 (Vernon 1997). That same day, the trial court signed an order vacating the judgment in garnishment and dissolving the writ of garnishment.

Although it is not included in the clerk's record, an order signed on June 23, 2000, enjoined FNSC from withdrawing funds from its Community Bank accounts to a level below $15,000.

FNSC subsequently filed three motions: 1) a motion for non-recognition of the foreign judgment; 2) a motion to vacate the foreign judgment; and 3) a motion to vacate the June 23, 2000, order (which required FNSC to keep at least $15,000 of its funds in the Community Bank accounts) and to dismiss Cause No. D–162,543. The motion for non-recognition alleged that the Utah judgment filed in Texas had not been properly authenticated. There is no order denying FNSC's motion in the clerk's record, but a docket sheet notation for July 17, 2000, states, "First National's Motion for Non Recognition heard and denied; court will wait for ruling from Utah court

before ordering garnishment." The motion to vacate the foreign judgment alleged the following: the Utah court lacked jurisdiction because the employment contract underlying the dispute placed jurisdiction in Texas; the Utah small claims judgment was void because expenses are not recoverable under the Utah Wage Statute; the Utah judgment was not final and, therefore, not entitled to full faith and credit because it did not award a service fee pleaded for by the plaintiff; and the Utah judgment had been procured by fraud because the plaintiff's demand letter to FNSC had asked for $4,400.19, not $5,000.00 as alleged in the Utah petition. It appears the trial court never heard this motion. The motion to dismiss the suit, which FNSC filed on April 27, 2001, alleged that the Utah small claims judgment had been set aside on October 10, 2000, and the suit had been dismissed by the Third District Court of Utah on October 25, 2000. FNSC alleged, "Since the Plaintiff does not have a Judgment against Defendant, Plaintiff is not entitled to garnishment against Defendant's accounts at Community Bank and Trust, SSB and is not entitled to any of the relief requested." FNSC attached to its motion to vacate the foreign judgment a copy of a motion to set aside default judgment, dated June 27, 2000, in which it urged the Utah court to vacate the default judgment in accordance with Rule 60(b) of the Utah Rules of Civil Procedure.[1]

---

1. [Utah Rules of Civil Procedure] Rule 60. Relief from judgment or order.

. . . .

(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence

could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of

On May 4, 2001, Wrigley filed a motion to release the contested funds to him, "pursuant to the judgment entered on April 4, 2001 in the case of *Woody Wrigley v. First National Security, Corp.*, Cause No. 00–840–0142, in the Third Judicial District Court, Salt Lake County, State of Utah." Wrigley attached his affidavit, which averred that the Texas court issued a writ of garnishment on March 30, 2000, that the writ was served the next day, that a notice of filing of foreign judgment, pursuant to Civil Practice and Remedies Code Section 35.004, issued and was mailed on April 20, 2000, and notice of writ of garnishment, pursuant to Civil Practice and Remedies Code Section 35.005, was supplied through service by constable. Wrigley's affidavit admitted that the Utah court entered an order on October 4, 2000, which set aside the February 23, 2000, judgment, and that the same court dismissed his complaint without prejudice on October 25, 2000. Wrigley also explained that he effectively appealed on November 7, 2000, that on March 30, 2001, a trial *de novo* was held, and on April 4, 2001, judgment in the amount of $5,110.00 was entered for Wrigley. Wrigley attached a certified copy of the April 4, 2001, judgment of the Third Judicial District Court, Salt Lake County, Sandy Department, State of Utah, in Cause No. 00–840–0142. The judgment recited that Wrigley was entitled to $4,400.00 in reimbursement for job-related expenses, and prejudgment interest from January 1, 2000, to March 30, 2001, in the amount of $550.00, and costs in the amount of $160.00.

On May 4, 2001, the trial court considered FNSC's "Motion to Vacate Order Regarding Garnishments And For Dismissal." The judgment does not recite that an evidentiary hearing was conducted, and none is noted on the docket sheet. It appears that the matter was submitted to the trial court upon the motions, responses, and affidavits of the parties.[2] On May 17, 2001, the trial court entered a judgment that found "that Plaintiff's Judgment against Defendant upon which the Garnishment proceedings herein were based was set aside"; ordered Community Bank to release the funds in controversy to the attorney for FNSC; and dismissed Wrigley's suit. Wrigley filed a motion for new trial on May 24, 2001.

Subsequently, a controversy arose between Community and FNSC: Community asserted an unrelated $280,000 claim against the FNSC funds on deposit at Community Bank. On August 9, 2001, the trial court entered an order in enforcement of its May 17, 2001, judgment in which it ordered Community Bank to pay the $15,000 fund in its possession to the attorney for FNSC. That order included the following language: "[T]he payment of the above described funds, in the manner prescribed, shall release and discharge Community Bank from any further responsibility or liability to any party in the above

the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), or (3), not more than 3 months after the judgment, order, or proceeding was entered or taken. A motion under this Subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. UTAH R. CIV. P. 60(b).

2. The court may have been proceeding without objection, under TEX.R. CIV. P. 664a ("The court's determination may be made upon the basis of affidavits, if uncontroverted, setting forth such facts as would be admissible in evidence; otherwise, the parties shall submit evidence.").

styled and numbered causes of action, based on any act of omission on the part of Community Bank, or based on Community Bank's status as garnishee in the above identified garnishment proceedings."

Wrigley filed notice of appeal on August 22, 2001. FNSC then asked this Court to dismiss the appeal for mootness and for want of jurisdiction. On June 20, 2002, we granted an extension of time for filing notice of appeal because Wrigley filed notice of appeal within fifteen days of the last day allowed for filing, and he reasonably explained the need for an extension of time to perfect appeal. That same order denied the motion to dismiss the appeal for lack of jurisdiction, but ordered Wrigley to amend his notice of appeal. He filed an amended notice of appeal on July 18, 2002. We deferred ruling upon the motion to dismiss for mootness until submission of the appeal, and it is that issue which we now consider.

FNSC contends "Wrigley's garnishment actions were dismissed by the trial court on May 17, 2001. Apparently, Wrigley wants this Court to resurrect his garnishment suits." The trial court's order of May 17, 2001, is a final, appealable order, timely and duly appealed in the manner permitted by the Texas Rules of Appellate Procedure and the decisional law of this State. *See* Tex.R.App. P. 25.1, 26; *Verburgt v. Dorner*, 959 S.W.2d 615 (Tex. 1997). If we conclude that the error complained of probably caused the rendition of an improper judgment, we may modify the trial court's judgment, reverse that judgment and remand the cause, or reverse and render judgment, as the error involved and the interest of justice require. *See* Tex.R.App. P. 43, 44.

■ FNSC argues that, in order for a garnishment action to lie, there must be property, money, or credits of the debtor in possession of another, and, because Community Bank released the funds to FNSC's attorney, no such funds currently exist.[3] We disagree. The trial court's post-judgment orders regarding the disputed funds cannot moot the appeal of the judgment itself. *Apparel Contractors, Inc. v. Vantage Properties, Inc.*, 620 S.W.2d 666, 668 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.)("Regardless of whether a judgment has been superseded, it is not final so long as an appeal is pending, and, although it may be enforced by execution, payment of a fund to one party pending appeal does not discharge liability to a different party that may be established after reversal."). Generally, satisfaction of a judgment will not moot the appeal, provided the appellant did not pay the judgment voluntarily. *Riner v. Briargrove Park Property Owners, Inc.*, 858 S.W.2d 370, 371 (Tex.1993). Because the controversy is not moot, we must consider the issue raised by the appellant: whether the trial court erred in failing to recognize and enforce the judgment against FNSC's funds on deposit with Community Bank.

■ Wrigley's Texas suit consisted of the filing of a foreign judgment and an application for a writ of garnishment, a subsequent injunction, the filing of a foreign judgment in the same cause after retrial in Utah, and a request for an order to have the funds turned over to him. The trial court correctly ruled that the February 23, 2000, judgment in Cause No. 00–840–0142 had been set aside. However, in an amended pleading, Wrigley filed the April 4, 2001, Utah judgment in Cause No. 00–840–0142. The trial court ruled only

---

**3.** FNSC makes the following representation in its motion: "The disputed $15,000 which Community had taken on May 17, 2001, rep-

resented the last apparent resource available to FNSC."

that Wrigley's application for garnishment could not support a judgment in garnishment because the former Utah judgment had been set aside by the Utah court. Although aware of it, the trial court never addressed the issue of whether the April 4, 2001, Utah judgment is entitled to full faith and credit.[4]

A writ of garnishment is available if a plaintiff has a valid, subsisting judgment. TEX. CIV. PRAC. & REM.CODE ANN. § 63.001 (Vernon 1997). Unless a supersedeas bond is filed, the judgment is deemed final and subsisting for the purposes of garnishment from and after the date it is signed. TEX.R. CIV. P. 657. If the court finds that the garnishee is indebted to the defendant in any amount, or was so indebted when the writ of garnishment was served, the court shall render judgment for the plaintiff. TEX.R. CIV. P. 668. The funds captured by the writ of garnishment are those held by the garnishee in the account of the judgment debtor on the date the writ is served, and any additional funds deposited through the date the garnishee is required to answer. *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 164 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Consolidated Gasoline Co. v. Jarecki Mfg. Co.*, 72 S.W.2d 351 (Tex.Civ.App.-Eastland 1934), *opin. adopted,* 129 Tex. 644, 105 S.W.2d 663 (1937). It does not necessarily follow that the plaintiff's right to recover those funds from the garnishee is fixed by whatever judgment the plaintiff possesses on that date. The issuance and service of the writ of garnishment fixes the trial court's juris-

diction to determine whether the garnishee holds funds belonging to the judgment debtor, and necessarily that jurisdiction extends to a determination of title and ownership of the funds, regardless of how that ownership is placed in controversy. *Thompson v. Fulton Bag & Cotton Mills*, 155 Tex. 365, 286 S.W.2d 411, 414 (Tex. 1956). The garnishee may deposit the funds into the court, bring in all other claimants through interpleader, and the trial court may then adjudicate the conflicting claims of the parties. *Id.*[5]

Suing out a writ of garnishment prior to the finality of the underlying judgment may affect the priority of competing liens. *See Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). The competing claimants here are a judgment creditor and a judgment debtor, not two judgment creditors, so lien priority is not an issue. The trial court based its ruling upon the precedent set by *Tom Benson Chevrolet Co. v. Beall*, 567 S.W.2d 857, 859 (Tex.Civ.App.-San Antonio 1978, writ ref'd, n.r.e.). That case stands for the general proposition that a garnishment judgment, being merely a mode of enforcing the execution of a judgment, must be supported by a valid judgment in the underlying suit. *Id.* Another case stating this proposition is *Enis v. Smith*, 883 S.W.2d 662, 663 (Tex.1994), which held that mandamus would lie to set aside a turnover order after the underlying out-of-state judgment was set aside by the issuing court for lack of personal jurisdiction

---

4. Because its resolution is not necessary to this appeal, and may arise in subsequent litigation, we express no opinion on the issue of whether the April 4, 2001, judgment is entitled to full faith and credit. For the purposes of this appeal we will assume that this Utah judgment was properly domesticated.

5. In *Thompson*, the issue involved the effect that the quashing of the writ of garnishment had on the trial court's jurisdiction after a second garnishment proceeding was initiated in another county. *Thompson*, 286 S.W.2d at 412–13. The trial court had jurisdiction because the subject matter of the suit was the ownership of the funds.

over the defendant. *See also Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (A bankruptcy filing and discharge occurring after the service day for the writ of garnishment precluded a judgment in garnishment.). In *Enis* and *Owen Electric*, the ultimate outcome of the underlying litigation was favorable to the judgment debtor in the enforcement proceeding. In *Tom Benson Chevrolet*, the void judgment was eventually succeeded by a valid judgment for the garnishor in the enforcement proceeding. *Tom Benson Chevrolet*, 567 S.W.2d at 859. The Court of Appeals did not consider the effect of the subsequent judgment because the trial court had granted the garnishment judgment on the first void judgment. The Court of Appeals could not consider the effect of the second judgment for the first time on appeal. In contrast, Wrigley expressly asked the trial court to enforce the second judgment. *Tom Benson Chevrolet* is not authority for the proposition that a garnishment judgment cannot be based upon a new judgment entered after the granting of a motion for new trial.

■■■ A judgment creditor may enforce a domestic judgment even pending appeal unless a supersedeas bond has been filed. *Anderson v. Lykes*, 761 S.W.2d 831, 833–34 (Tex.App.-Dallas 1988, orig. proceeding). Furthermore, garnishment is not the sole means through which the judgment creditor may seek the court's assistance in reaching the debtor's property. The court may order the judgment debtor to do the following: 1) turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution; 2) otherwise apply the property to the satisfaction of the judgment; or 3) appoint a receiver. TEX.

CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon Supp.2003). In this case, Wrigley asked the trial court to order the release of the funds to him to satisfy his April 4, 2001, judgment. That motion is essentially an application for a turnover order. The rules and statutes relating to the collection of judgments are strictly construed against enforcement, however, and Wrigley did not satisfy the requirements for either a turnover order or a writ of garnishment. *Id.*; TEX.R. CIV. P. 658. *See Thompson v. Harco Nat'l Ins. Co.*, 997 S.W.2d 607, 611 (Tex.App.-Dallas 1998, pet. denied), *overruled on other grounds by John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex.2001) (The *Thompson* case held that statutory provisions for garnishment are to be strictly construed). Therefore, the trial court did not abuse its discretion by failing to order the funds be released to Wrigley. The judgment of the trial court is affirmed.

AFFIRMED.

DON BURGESS, Justice, dissenting.

I respectfully dissent. This is a fairly simple case. Mr. Wrigley began this action on March 30, 2000, basing it on a February 23, 2000, Utah Small Claims Judgment. Although there were several legal maneuvers, by May 4, 2001, Wrigley had presented the Texas District Court with a April 4, 2001, Utah District Court Judgment which was based on an appeal and trial de novo of the February 23, 2000, Small Claims Judgment.

The majority notes: "Although aware of it, the trial court never addressed the issue of whether the April 4, 2001, Utah judgment is entitled to full faith and credit." Then, in a footnote, they also note: "For purposes of this appeal we will assume that this Utah judgment was properly domesticated."

In a letter to all parties dated May 17, 2001, the trial court stated:

> ... The basis of the garnishment entered by this court on June 23, 2000, was two prior default judgments obtained by plaintiff. Subsequently, however, these were vacated and/or dismissed. Apparently, plaintiff, ultimately, obtained an appeal (trial de novo under Utah law) in which the Court ruled favorably for the plaintiff.
>
> Nonetheless, it is clear under Texas law, once the original default judgments were vacated and/or set aside, the original garnishment became a nullity and the subsequent judgment, would do nothing to revive the validity of the writ of garnishment.
>
> In *Tom Vincent [sic] Chevrolet Company v. Beall,* 567 S.W.2d 857 (Tex.Civ. App–San Antonio 1978, writ ref'd n.r.e.), the Court held that a garnishment based on an original default judgment that was set aside, could not be enforced on the basis of a subsequent judgment on that debt. There, the Court stated

> > "[W]e need not discuss the second judgment as the garnishment was filed prior to the rendition of the second judgment and the Court does not purport to base the garnishment judgment thereon".

Id. at 859.

The majority acknowledged the trial court based its ruling on *Tom Benson Chevrolet Company v. Beall,* 567 S.W.2d 857 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.) and correctly concludes that case: "... stands for the general proposition that a garnishment judgment, being merely a mode of enforcing the execution of a judgment, must be supported by a valid judgment in the underlying suit." They also noted: *"Tom Benson Chevrolet* is not authority for the proposition that a garnishment judgment cannot be based

upon a new judgment after the granting of a motion for new trial."

The majority makes the case *for* Wrigley and then, without more, simply concludes: "... and Wrigley did not satisfy the requirements for either a turnover order or a writ of garnishment." Under the analysis and facts utilized by the majority, at the time the trial court vacated the garnishments and dismissed the suit (May 17, 2001), Wrigley had provided the trial court a properly domesticated judgment (the April 4, 2001 Utah judgment).

The trial court simply misinterpreted the law and applied it incorrectly. The majority acknowledges this, yet, incredibly, still affirms. I dissent.